**Paul E. AGNER, et al. and Donald Charlson, et al., Plaintiffs,**

**v.**

**The UNITED STATES, Defendant.**

**Nos. 2–84C, 55–84C.**

United States Claims Court.

Aug. 15, 1985.

Sheldon H. Laskin, Ellicott City, Md., for plaintiffs. Rupli, Vekert & Laskin, Ellicott City, Md., of counsel.

Stuart James, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Robert A. Lincoln, Washington, D.C., of counsel.

## OPINION

MAYER, Judge.

Plaintiffs in these consolidated cases are 163 present or former members of the Special Police Force of the Library of Congress. They ask for a determination that their lunch breaks are not duty free as a matter of law under the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219, and that compensated lunch time cannot be offset against uncompensated pre- and post-shift work to deprive them of overtime pay.

The case is before the court on cross-motions for partial summary judgment. By stipulation, the parties agree that if defendant prevails on the duty free lunch issue the entire case will conclude in defendant's favor; if plaintiffs prevail, other issues must be considered by the court. The facts surrounding the duty free lunch issue also have been stipulated. No material facts are in dispute and summary judgment is appropriate.

### Background

Under their collective bargaining agreement, plaintiffs are entitled to a lunch period of thirty minutes, during which they are relieved from their posts but are officially on duty and subject to call. They may take their lunch break in any appropriate eating area, but must remain on library premises, in uniform, and in possession of their firearms. While on duty plaintiffs generally carry two-way radios. They must be kept on during lunch and any calls from supervisors, either in person or over the radio, must be answered. Otherwise plaintiffs may use their lunch period as they choose.

Before July 22, 1983, plaintiffs worked a watch of eight consecutive hours; their thirty minute lunch break took place during the eight hour watch. But on that date, a new collective bargaining agreement went into effect changing the duty hours. The new agreement required plaintiffs to be present for an eight and one-half hour tour of duty, only eight hours of which were paid. Twenty minutes were added to the beginning and ten minutes to the end of the shift for such activities as drawing and turning in weapons and radios and receiving duty assignments. The lunch period remains compensated time, but the pre- and post-shift periods are not. Plaintiffs claim their lunch period is not duty free, cannot be offset against the uncompensated time spent before and after the shift on employer required activities, and must be included in "hours worked" in determining entitlement to overtime pay.

### Discussion

█ As federal employees, plaintiffs are protected by two statutes requiring compensation for overtime work. Section 7(a)(1) of the FLSA, 29 U.S.C. § 207(a)(1), requires overtime pay "for a workweek longer than forty hours;" and section 5542(a) of the Federal Employees Pay Act (FEPA), 5 U.S.C. § 5542(a), requires overtime pay for work "in excess of 40 hours in an administrative workweek, or ... in excess of 8 hours in a day." Federal employees were covered only by the FEPA until 1974 when the FLSA was extended to them by Pub.L. No. 93–259, 88 Stat. 55 (1974) (codified in various sections of 29 U.S.C.). Under this dual coverage, where there is an inconsistency between the statutes, employees are entitled to the greater benefit. *See* Library of Congress Reg. 2013–18, Section 3; *see also* 54 Comp.Gen. 371 (1974).

Both the FEPA and the FLSA provide for overtime compensation, but plaintiffs say their claim arises solely under the FLSA. Despite the similarity between these overtime provisions, they believe the cases that have defined "hours worked" under the FLSA are separate and distinct from the same determinations made under the FEPA. Therefore, plaintiffs urge the court to follow *Culkin v. Glenn L. Martin Nebraska Co.*, 97 F.Supp. 661 (D.Neb. 1951), *aff'd.*, 197 F.2d 981 (8th Cir.1952), which involved security guards at a military contractor's plant at the height of World War II. Military aircraft were built and refurbished there and the guards were needed to secure the installation from espionage and sabotage, as well as to preserve order. The trial court found that during

lunch, the security guards were required to remain on the employer's premises and in uniform with sidearms, watch for employees without badges, and take any necessary enforcement action. This, it held, was not a duty free lunch. 97 F.Supp. at 673. The court of appeals agreed because during lunch the guards were "substantially performing the duties assigned to them by their employer and were not free to follow pursuits of a purely private nature." 197 F.2d at 984.

Moreover, plaintiffs believe *Culkin* is controlling because a Department of Labor regulation, 29 C.F.R. § 785.19 (1984), which defines a duty free lunch under the FLSA and is applicable to Library of Congress employees, cites *Culkin* as an example of when an employee is working while eating. Because the Supreme Court has directed that courts be guided by administrative interpretation of the FLSA, *see Skidmore v. Swift & Co.*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), plaintiffs see the reference to *Culkin* in these regulations as of special importance.

In *Baylor v. United States*, 198 Ct.Cl. 331 (1972), a FEPA case, the Court of Claims determined that the lunch period of General Services Administration security guards who were regularly relieved for lunch was duty free and not "hours of employment" even though they had to remain on the employer's premises, in a duty status, and subject to emergency call. This was in contrast to other guards in the same case who had to eat at their posts or on a "catch as catch can" basis and were held not to have a duty free period. *Id.* at 361–65. In plaintiffs' view, when the FLSA was extended to federal employees in 1974, it statutorily overruled what they call the duty free lunch rule under the FEPA represented by cases like *Baylor*. Because the legislative history accompanying the 1974 act directs that under the FLSA federal employees are to be treated the same as employees in other sections of the economy, *see* H.R.Rep. No. 913, 93rd Cong., 2d Sess. *reprinted in* 1974 U.S.Code Cong. & Ad.News 2811, 2837, prior FEPA decisions, which only affected federal workers, are no longer applicable.

Not only do plaintiffs believe that *Baylor* established a duty free lunch rule unique to the FEPA and no longer operative, they also assert that it does not control their claim because the FLSA decisions, like *Culkin*, provide a duty free lunch rule of greater benefit. Payment for a lunch period is a greater benefit than not being paid; therefore, they say regulations require that they receive the "greater benefit" provided by the so called FLSA duty free lunch rule. *See* Library of Congress Reg. 2013–18, Section 3.

■ Defendant's position in opposition is that the parallel provisions of the FEPA, 5 U.S.C. § 5542(a), and the FLSA, 29 U.S.C. § 207(a)(1), are *in pari materia*. Though not identical, their language is indistinguishable, and courts have applied precedent under these statutes interchangeably.

The court is of the view that defendant is correct. There is only one "rule." If covered employees perform substantial duties during their lunch breaks they must be paid and that time may not be offset against other, uncompensated work periods. If they are relieved of substantial duties, they are following their own pursuits not the employer's, and this time, if compensated, may offset the other periods. The inquiry is the same under both the FEPA and the FLSA. Both, insofar as they are of interest in this case, provide the same overtime pay benefit. Neither the Court of Claims nor other courts have distinguished between them when making a determination of "hours worked."

In *Armstrong v. United States*, 144 Ct.Cl. 659, 661–62 (1959), a FEPA case, the Court of Claims expressly relied on the FLSA decisions in *Armour & Co. v. Wantock*, 323 U.S. 126, 65 S.Ct. 165, 89 L.Ed. 118 (1944), and *Skidmore v. Swift & Co.*, 323 U.S. 134, 65 S.Ct. 161, 89 L.Ed. 124 (1944). "They arose under the Fair Labor Standards Act, but this Act, as also the Federal Employees Pay Act, required overtime pay for 'employment' beyond a certain number of hours." 144 Ct.Cl. at 661.

*Baker v. United States*, 218 Ct.Cl. 602 (1978), further demonstrates that the two acts are *in pari materia*. Like our plaintiffs, the plaintiffs in *Baker* were federal employees who claimed their meal periods were compensable. Their claims covered a period of six years, part of which arose only under the FEPA. The other part of their claim, however, accrued after May 1, 1974, when the FLSA was extended to federal employees, and therefore came under both the FEPA and the FLSA. The court did not bifurcate its analysis to accommodate the different statutes; it applied a single set of principles to determine whether eating was compensable under both. 218 Ct.Cl. at 619 n. 10. A recent FLSA lunch period pay case, *Hill v. United States*, 751 F.2d 810, 814 (6th Cir.1984), also recognized that Court of Claims FEPA decisions were applicable under the FLSA.

Therefore, plaintiffs' attempt to find a concept of "hours worked" or a separate duty free lunch rule under the FLSA different from the FEPA is not persuasive. The receipt of overtime compensation under either statute is dependent on the number of hours worked, a fact specific inquiry. Considerations of whether the circumstances of a lunch period suffice to make it duty free or not under either the FEPA or the FLSA are applicable interchangeably.

█ The court sees nothing to distinguish *Baylor v. United States*, 198 Ct.Cl. 331, from our case. Indeed, apart from its FEPA context, plaintiffs have not suggested that the two cases are factually different. This court is bound by decisions of the Court of Claims, and *Baylor* is controlling here. *See also Bowling v. United States*, 181 Ct.Cl. 968, 980 (1967). Therefore, on the stipulated facts, plaintiffs have a duty free lunch break during which they need only eat, rest, or engage in any other appropriate personal activity. "[T]he mere fact that an employee is required to eat lunch on the employer's premises and to be on a duty status, subject to emergency call during such period, does not convert this private leisure time into compensable time." *Baylor*, 198 Ct.Cl. at 364. The court does not view the requirement that radios be kept on during this time as significant. Plaintiffs must respond to calls from supervisors. The radios are merely extensions of the supervisors' voices, if you will, which contribute to efficiency. Keeping them on is no more onerous than a requirement to stay alert to voice commands, and less so than requiring plaintiffs to stay within voice range of supervisors so they can be summoned if necessary. Indeed, it is a fair inference that radios enhance employees' freedom during the lunch break.

The Department of Labor's reference to *Culkin v. Glenn L. Martin Nebraska Co.*, in 29 C.F.R. § 785.19 (1984), of which much is made, does not help plaintiffs. Agency interpretations are entitled to respect, *see Skidmore v. Swift & Co.*, 323 U.S. at 140, 65 S.Ct. at 164, but these regulations are guidelines and not binding on the court. *See Hill v. United States*, 751 F.2d at 813. In fact, they expressly recognize that "ultimate decisions on interpretations of the act are made by the courts." 29 C.F.R. § 785.2. The citation to *Culkin* is merely illustrative; even if it were factually the same as this case, which it is not, it could not control in the face of contrary precedent binding the court.

This is not a case where one statute offers a greater benefit over the other; the concept of "hours worked" under both the FEPA and the FLSA is the same. Plaintiffs' lunch periods are duty free and may be offset against pre- and post-shift activities.

### Conclusion

Accordingly, plaintiffs' motion for partial summary judgment is DENIED, defendant's cross-motion for summary judgment is GRANTED, and the case will be DISMISSED. Costs to defendant.